IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| JUD and SHERRI SMITH, LP PROPERTIES, LLC, BEN MCLEOD, BEN-RIP-J, INC., and HARRY M. BARNES, III MD and NECESSITY SPORT FISHING, LLC )<br><br>      Plaintiffs,<br><br>v.<br><br>BP, PLC, BP AMERICA, INC., BP PRODUCTS NORTH AMERICA, INC., TRANSOCEAN, LTD, (TRANSOCEAN ENTITY), TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., (TRANSOCEAN ENTITY), TRANSOCEAN DEEPWATER, INC., (TRANSOCEAN ENTITY), HALIBURTON ENERGY SERVICES, INC., CAMERON INTERNATIONAL CORPORATION f/k/a COOPER CAMERON CORPORATION (CAMERON),<br><br>      Defendants. | Case Number: 3:10-cv-200 |

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiffs, Jud and Sherri Smith, LP Properties, LLC, Ben McLeod and Ben-Rip-J, Inc., individually and on behalf of all others similarly situated, and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, brings this action against the Defendants identified below, and sets forth and says as follows:

## INTRODUCTION

1.      On April 20, 2010, at approximately 10 p.m. (central), an explosion occurred on the Deepwater Horizon, an oil rig in the Gulf of Mexico. This explosion resulted in the sinking of the Deepwater Horizon and a massive on-going oil spill. Since the spill began, approximately 5,000 barrels (210,000 gallons) of crude oil have been spilling and/or leaking into the water daily. The ensuing oil slick already covers approximately 2,200 square miles of ocean and is rapidly increasing. The oil slick is quickly heading towards the Alabama coast and has already caused detrimental effects to the Alabama coastal area, as well as the Gulf of Mexico's marine environment.

## PARTIES

2.      Plaintiffs Jud and Sherri Smith, are citizens of the State of Alabama, who earn income from the rental of beachfront property in Gulf Shores, Alabama. As a result of the events described above and below, they have been damaged and will continue to be damaged as more fully described below.

3.      Plaintiff LP Properties, LLC ("LP Properties"), is an Alabama Limited Liability Company in Walker County, Alabama. All members of LP Properties are citizens of the State of Alabama. As a result of the events described above and below, this LLC has been damaged and will continue to be damaged as more fully

2

described below.

4.     Plaintiff Ben McLeod is a citizen of the State of Florida, and earns income from the operation of a charter fishing boat/fleet in the Gulf of Mexico based out of Gulf Shores, Alabama.  Mr. McLeod is a licensed fishing and charter boat operator who is the captain of the "Highlander."  As a result of the events described above and below, he has been damaged and will continue to be damaged as more fully described below.

5.     Plaintiff Ben-Rip-J, Inc. ("BRJ") is a corporation whose principal place of business is Gulf Shores, Alabama, and is organized and existing under the laws of the State of Florida.  BRJ owns and operates the commercial boat "Highlander" which is engaged in the business of providing charter and/or fishing boat services in Gulf Shores and Orange Beach, Alabama.  As a result of the events described above and below, this corporation has been damaged and will continue to be damaged as more fully described below.

6.     Plaintiffs Harry M. Barnes, III MD is the sole owner of Necessity Sport Fishing, LLC.  Dr. Barnes is a citizen of the State of Alabama.  Necessity Sport Fishing, LLC owns and operates fishing boats in the Gulf of Mexico based out of Gulf Shores, Alabama.  As a result of the events described above and below, Dr. Barnes and Necessity Sporting Fishing, LLC have been damaged and will continue

3

to be damaged as more fully described below.

7.     Defendants BP, PLC, BP America and BP Products North America, Inc. (hereinafter referred to collectively as "BP"), are foreign corporations doing business in this country, including the Gulf of Mexico.

8.     Transocean, Ltd, ("Transocean Ltd"), is a foreign corporation doing business in this country, including the Gulf of Mexico.

9.     Transocean Offshore Deepwater Drilling, Inc., ("Transocean Offshore"), is a foreign corporation doing business in this country, including the Gulf of Mexico.

10.    Transocean Deepwater, Inc., ("Transocean Deepwater"), is a foreign corporation doing business in this country, including the Gulf of Mexico.

11.    BP Products North America, Inc. ("BP Products"), is a foreign corporation doing business in this country, including the Gulf of Mexico.

12.    Haliburton Energy Services, Inc., ("Haliburton"), is a foreign corporation doing business in this country, including the Gulf of Mexico.

13.    Cameron International Corporation f/k/a Cooper Cameron Corporation ("Cameron"), is a foreign corporation that manufactured, supplied and/or maintained defective and/or inoperable Blow-Out Preventers (BOP).

## JURISDICTION AND VENUE

14.    This Court has jurisdiction over this class action pursuant to (1) 28

4

U.S.C. § 1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interests and costs, and it is a class action brought by citizens of a State that is different from the State where at least one of the Defendants is incorporated or does business; (2) 28 U.S.C. § 1331, because the claims asserted herein arise under the laws of the United States of America, including the laws of the State of Alabama, and (3) 43 U.S.C. § 1331(1), which extends exclusive Federal jurisdiction to the outer Continental Shelf.

15.     This district is proper under 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claims asserted herein occurred in this district.

## FACTUAL ALLEGATIONS

16.     Transocean, Ltd., Transocean Offshore and Transocean Deepwater (collectively "Transocean") are the owners and/or operators of a semi-submersible mobile drilling rig named the Deepwater Horizon, which was performing completion operations for BP, on April 20, 1010, on the outer Continental Shelf, at the origination of the oil spill site.

17.     BP are the holders of a lease granted by the Minerals Management Service that allows BP to drill for oil and perform operations related to oil production at the oil spill site, and on April 20, 2010 operated the oil well that is the source of the oil spill.

5

18.    Upon information and belief, Cameron manufactured and/or supplied the Deepwater Horizon's Blow-Out Preventers ("BOP's") that failed to operate at the time of the explosion. The BOP's should have prevented the oil spill, but did not. The BOP's were defective where they failed to operate as intended. For these reasons, Cameron is liable to Plaintiffs and those similarly situated pursuant to the Alabama Extended Manufacturers Liability Doctrine ("AEMLD") in addition to being liable for its negligence.

19.    Upon information and belief, Haliburton was engaged in cementing operations of the well and well cap and negligently performed these duties. Haliburton's negligence increased the pressure at the well, causing a fire, which, in turn, caused the explosion, resulting in the oil spill.

20.    At all time material hereto, the Deepwater Horizon was owned, manned, possessed, managed, controlled, chartered and/or operated by Transocean and/or BP.

21.    The Deepwater Horizon explosion, subsequent sinking and the resulting oil spill were caused by the negligence of Defendants, which renders them liable jointly, severally to Plaintiffs and those similarly situated for all their damages.

22.    The defendants failed to take reasonable steps which, if implemented, would have prevented the oil spill disaster, including but not limited to, installation of a remote shut-off valve, and redundant shut-off valves, which would have provided

6

a means separately and severally, to shut off the flow of oil into the Gulf of Mexico from the Deepwater Horizon underwater oil well in the event of an emergency.

23.     The pristine beaches of the Alabama coast are punctuated by crystal clear waters and bright white sand which is unique to the area as formed geologically as part of the Appalachian dome effect.

24.     Tourists routinely travel to Gulf Shores, Alabama, specifically to enjoy the clear waters and white sand beaches that are nationally recognized as some of the finest in the world.

25.     The injuries and damages suffered by Plaintiffs and those similarly situated were caused by the defendants' numerous violations of statutes and regulations, including but not limited to, statutes and regulations issued by OSHA and the United States Coast Guard, including the requirements to test the sub-sea BOP's at regular intervals.

26.     The defendants knew of the dangers associated with deep water drilling and failed to take appropriate measures to prevent damage to the plaintiffs, those similarly situated, Alabama's and the Gulf of Mexico's marine and coastal environments, and the Coastal Zone, where the plaintiffs and those similarly situated work and earn a living.

27.     The oil spill is causing dangerous environmental contamination of the

7

Gulf of Mexico and its shorelines, which will continue to cause loss of revenue to persons and businesses who are being prevented from using the Gulf of Mexico's waters and shoreline and Alabama's coastal zone for recreational activities and their right to earn a living.

28.     As of the date of filing, rentals of fishing boats and/or charters are down thirty percent (30%) which also includes a corresponding decline in condominium and hotel rentals; all directly attributable to the defendants' careless, wrongful, negligent, and illegal conduct in causing and/or contributing to the creation of a massive oil slick that is presently twice the size of the State of Maryland and is set to make landfall on the Alabama coast.

29.     There are many other potential effects from the oil spill that have not yet become known.  The plaintiffs reserve the right to amend this Complaint once additional information becomes available.

## CLASS DEFINITION

30.     The plaintiffs bring this action on behalf of themselves and all others similarly situated, who are members of the following Class:

> All Alabama residents who live or work in, or derive income from, the Alabama "Coastal Zone," as defined in 43 U.S.C. § 1331(e), and who have sustained any legally cognizable loss and/or damages as a result of the April 20, 2010 explosion which occurred aboard the Deepwater Horizon drilling rig and the resulting oil spill; the class includes, but is

not limited to these persons who rely on hotel and condominium property rentals to derive income as well as business that rely on the coastal zone for recreation and income.

31.    Excluded from the Class are:

a.     the officers and directors of any of the Defendants;

b.     any judge or judicial officer assigned to this matter and his or her immediate family; and

c.     any legal representative, successor, or assign of any excluded persons or entities.

## CLASS ACTION ALLEGATIONS

### a.    Numerosity of the Class

32.    The proposed Class is so numerous that joinder is impractical.  The disposition of the claims asserted herein through this class action will be more efficient and will benefit the parties and the Court.

### b.    Predominance of Common Questions of Fact and Law

33.    There is a well-defined community of interest in that the questions of law and fact common to the Class predominate over questions affecting only individual Class Members and include, but are not limited to, the following:

a.     Whether the defendants caused and/or contributed to the explosion and/or oil spill;

b.     Whether the defendants' acts and/or omissions were negligent;

9

c.   Whether the explosion and oil spill have caused environmental or other damage; and

d.   The amount of damages the plaintiffs and the Class Members should receive in compensation.

**c.   Typicality**

34.   The plaintiffs and the Class Members have suffered similar harm as a result of the defendants' actions.

**d.   Adequacy of Representation**

35.   The plaintiffs will fairly and adequately represent and protect the interests of the members of the Class because their interests do not conflict with the interests of the Class Members they seek to represent. The plaintiffs have no claims antagonistic to those of the Class. The plaintiffs have retained counsel competent and experienced in complex class actions and environmental litigation.

**e.   Superiority**

36.   A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of the claims of all Class Members is impracticable. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to this Court in which individual litigation of thousands of cases would proceed. Individual litigation presents a potential for inconsistent or contradictory judgments, and the

prospect of a race for the courthouse and an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expenses and delay to the parties and the court system in resolving the legal and factual issues common to all claims related to the defendants' conduct alleged herein. By contrast, a class action presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

37.     The various claims asserted in the action are also certifiable under the provision of Rules 23(b)(1) and/or 23(b)(3) of the Federal Rules of Civil Procedure because:

   a.     The prosecution of separate actions by thousands of individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, thus establishing incompatible standards of conduct for the defendants;

   b.     The prosecution of separate actions by individual Class Members would also create the risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class Members who are not parties to such adjudications and would substantially impair or impede their ability to protect their interests; and

   c.     The questions of law or fact common to the Members of the Class predominate over any questions affecting only individual Members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I - NEGLIGENCE

38.     The plaintiffs, on behalf of themselves and the Class Members, repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if fully restated herein.

39.     The explosion and resulting oil spill was caused by the concurrent negligence of the defendants.

40.     Upon information and belief, the explosion and resulting oil spill was caused by the joint negligence and fault of the defendants in the following non-exclusive particulars:

a.      Failing to properly operate the Deepwater Horizon;

b.      Operating the Deepwater Horizon in such a manner that a fire and explosion occurred onboard, causing it to sink and then create an oil spill;

c.      Failing to properly inspect the Deepwater Horizon to ensure that its equipment and personnel were fit for their intended purpose;

d.      Acting in a careless and negligent manner without due regard for the safety of others;

e.      Failing to promulgate, implement and enforce rules and regulations pertaining to the safe operations of the Deepwater Horizon which, if they had been so promulgated, implemented and enforced, would have averted the fire, explosion, sinking and oil spill;

f.      Operation the Deepwater Horizon with untrained and unlicensed

12

personnel;

g.    Inadequate and negligent training and hiring of personnel;

h.    Failing to take appropriate action to avoid or mitigate the accident;

I.    Negligent implementation of policies and procedures to safely conduct offshore operations in the Gulf of Mexico;

j.    Employing untrained or poorly trained employees and failing to properly train their employees;

k.    Failing to ascertain that the Deepwater Horizon and its equipment were free from defects and/or in proper working order;

l.    Failure to timely warn;

m.    Failure to timely bring the oil release under control;

n.    Failure to provide appropriate accident prevent equipment;

o.    Failure to observe and read gauges that would have indicated excessive pressures in the well;

p.    Failure to react to danger signs;

q.    Providing BOP's that did not work properly;

r.    Conducting well and well cap cementing operations improperly;

s.    Acting in a manner that justifies imposition of punitive damages;

t.    Failure to follow industry standards and regulations observed at other oil platforms; and

u.    Such other acts of negligence and omissions as will be shown at the trial

13

of this matter; all of which acts are in violation of the laws of Alabama and Federal law applicable on the outer Continental Shelf.

41.    In addition, and in the alternative, the explosion, sinking and resulting oil spill were caused by defective equipment, including the BOP's, which were in the care, custody, and control of the defendants.  The defendants knew or should have known of these defects and are, therefore, liable for the defects.

42.    The injuries to the plaintiffs and the Class members were also caused by or aggravated by the fact that the defendants failed to take necessary actions to mitigate the danger associated with their operations.

43.    In addition to the negligent actions described above, and in the alternative thereto, the plaintiffs plead the doctrine of *res ipsa loquitur*.

44.    The plaintiffs and those similarly situated are entitled to a judgment finding the defendants liable to the plaintiffs and other class members for damages suffered as a result of the defendants' negligence, gross negligence and/or wanton conduct and awarding the plaintiffs and the other class members adequate compensation therefor in amounts determined by the trier of fact.

## COUNT II - OIL POLLUTION ACT

45.    The plaintiffs, on behalf of themselves and those similarly situated,

14

repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if fully copied herein.

46.    The Oil Pollution Act imposes liability upon a "responsible party for a . . . facility from which oil is discharged . . . into or upon navigable waters or adjoining shorelines" for the "damages that result from such incident." 33 U.S.C. § 2702.

47.    Section 2702(b)(2)(C) provides for the recovery of "[d]amages for subsistence use of natural resources, which shall be recoverable by any claimant who so uses natural resources which have been injured, destroyed, or lost, without regard to the ownership or management of the resources."

48.    The Coast Guard has named BP as the responsible party. Therefore, BP is liable pursuant to Section 2702 for all the damages that result from the oil spill.

As a result of the oil spill, the plaintiffs and those similarly situated have not been able to use natural resources, such as the air, water and other areas that have and/or may become contaminated by the oil spill, and are entitled to recover from BP for such damages in amounts to be determined by the trier of fact.

49.    Section 2702(b)(2)(E) provides for the recovery of "[d]amages equal to the loss of profits or impairment of earning capacity due to the injury, destruction, or loss of real property, personal property, or natural resources, which shall be

15

recoverable by any claimant."

50.     As a result of the oil spill, the plaintiffs and those similarly situated have suffered the type of damages that may be recovered pursuant to Section 2702(b)(2)(E), and they demand compensation therefor from BP in amounts to be determined by the trier of fact.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs, individually, and on behalf of those similarly situated, demand judgment against the defendants, jointly and severally, as follows:

a.      An order certifying the Class for the purpose of going forward with any one or all of the causes of action alleged herein; appointing the plaintiffs as Class Representatives; and appointing undersigned counsel as counsel for the Class;

b.      Economic and compensatory damages in amounts to be determined at trial, but not less than the $5,000,000.00 required by the Class Action Fairness Act which establishes one of this Court's bases of jurisdiction to hear this case;

c.      Punitive damages;

d.      Pre-judgement and post-judgment interest at the maximum rate allowable by law;

e.      Attorney's fees and costs of litigation;

f.      Such other and further relief available under all applicable state and federal laws and any relief the Court deems just and appropriate; and

g.    A trial by jury as to all Defendants.

## A JURY TRIAL IS REQUESTED AS TO ALL
## ISSUES SO TRIABLE TO A JURY IN THIS CASE

Respectfully submitted,


/s/ Jeff Friedman
Jeff Friedman (FRIEJ6868)
Attorney for Plaintiffs

**OF COUNSEL:**
FRIEDMAN, LEAK
3800 Corporate Woods Drive
Post Office Box 43219
Birmingham, Alabama 35243-3219
Phone:  (205) 278-7000
Fax: (205) 278-7001 d


/s/ Edward R. Jackson
Edward R. Jackson (JACKE6899)
Attorney for Plaintiffs

**OF COUNSEL:**
JACKSON, FIKES, HOOD
& BRAKEFIELD
P: O. Box 748
Jasper, Alabama 35502-0748
Phone: (205) 387-2171
Fax: (205) 387-2174

17

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT:**

BP, PLC
CT Corporation System
1200 S. Pine Island Road
Plantation, FL 33324

BP America, Inc.
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

BP Products North America, Inc.
c/o CSC-Lawyers Incorporating Service
150 S Perry Street
Montgomery, AL 36104

Transocean, Ltd
Capital Services, Inc.
615 South Dupont Highway
Dover, Delaware 19901

Tranocean Offshore Deepwater Drilling, Inc.
Capital Corporate Services, Inc.
800 Brazos, Suite 400
Austin, TX 78701

Transocean Deepwater, Inc.
Capital Services, Inc.
615 South Dupont Highway
Dover, Delaware 19901

Haliburton Energy Services, Inc.
300 N. Sam Houston Parkway E
Houston, TX 77032

Cameron International Corporation
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104